UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Oscar Santos Cardona

     v.

Strafford County Department
of Corrections, Superintendent et al

Civil No. 25-cv-439-LM-AJ
Opinion No. 2026 DNH 003 P

# O R D E R

Oscar Santos Cardona petitions for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his present detention violates the Immigration and Nationality Act (INA) and his rights to substantive and procedural due process under the Fifth Amendment because his removal is "not reasonably foreseeable." The government objects. Doc. no. 8. For the following reasons, Cardona's petition (doc. no. 5-1) is denied without prejudice.[1]

## STANDARD OF REVIEW

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petition "may be resolved on the merits without [an evidentiary] hearing when, as here, the material facts are not in dispute." Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar.

---

[1] In granting Cardona's motion to amend his petition, the court ordered him to refile the amended petition attached to his motion as the petition in this case. Although Cardona has not yet done so, the court treats that amended petition (doc. no. 5-1) as the operative petition in this case.

25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[2]

Cardona is a thirty-nine-year-old Honduran national. He is married to a United States citizen and has two children who are also United States citizens. However, Cardona himself is undocumented. Cardona first entered the United States on or about May 15, 2004. In November of that year, an immigration judge ("IJ") ordered him removed to Honduras in absentia. On March 3, 2005, the government removed Cardona.

On or about March 3, 2006, Cardona re-entered the country but was quickly apprehended by border patrol agents. The agents reinstated the initial removal order and removed Cardona a few days later. At some point thereafter, Cardona entered the country a third time.[3] On May 16, 2017, the government again reinstated Cardona's original removal order. Rather than detain Cardona until the government could effectuate his removal, the government released Cardona on an Order of Supervision, allowing him to remain out of custody subject to certain conditions.

---

[2] The following facts are not in dispute, expect where otherwise noted.

[3] Cardona claims that he has entered the country twice, however, the government has provided documentary evidence establishing that Cardona has entered the country at least three times and has been twice removed. Cardona does not challenge the authenticity of this documentary evidence.

On or about April 24, 2025, Cardona, through his attorneys, requested that the government conduct a reasonable fear interview.[4] On October 6, 2025, Immigration and Customs Enforcement ("ICE") detained Cardona and served him with a Notice of Revocation of Release which explained that ICE had determined that there is a "significant likelihood of removal in the reasonably foreseeable future" and that it was appropriate to enforce the existing removal order.[5]  Doc. no. 8-9 at 1.

On October 6, the day of Cardona's most recent arrest, he explained to an ICE officer that if he is sent back to Honduras, he "will die." Doc. no. 8-9 at 3. Accordingly, in early November, an asylum officer conducted a reasonable fear interview but found that Cardona did not have a reasonable fear of persecution or torture. On November 18, 2025, an IJ affirmed the asylum officer's finding.

The following day, Cardona filed a petition for review and a motion to stay his removal pending appeal in the First Circuit Court of Appeals. On December 3,

---

[4] 8 U.S.C. § 1231(b)(3)(A) provides that a noncitizen may not removed to a country where their "life or freedom would be threatened" on account of their "race, religion, nationality, membership in a particular social group, or political opinion." Under the implementing regulations, a noncitizen who, "in the course of the administrative removal or reinstatement process, expresses a fear of returning to the country of removal," is entitled to an interview with an asylum officer to determine whether the noncitizen "has established a reasonable fear of persecution or torture." 8 C.F.R. § 208.31(a)-(c). If the asylum officer determines that no reasonable fear exists, the noncitizen may request that an IJ review the asylum officer's determination. Id. at 208.31(g).

[5] The record does not reveal what efforts, if any, the government took to remove Cardona between reinstatement of his removal order in May 2017 and his arrest in October 2025.

2025, the government filed a motion for summary disposition. Five days later, the Circuit denied both the government's motion for summary disposition and Cardona's request for a stay of removal. On December 12, 2025, the Circuit set a briefing schedule.[6]

In his petition, Cardona appears to be claiming that his continued detention violates the INA and the Constitution because he is not likely to be removed.[7] Doc. no. 5-1 at 1 (arguing his "removal from the United States is not reasonably foreseeable because [he] has stated a fear of return to his home country and has requested a Reasonable Fear Interview with ICE."). Cardona also contends that his family has endured "undue emotional and financial distress" from his continued confinement. Id. at 5.

## DISCUSSION

The government argues that Cardona's petition should be denied because he has failed to allege facts or reference any specific law to support his claims that his continued detention violates either the Fifth Amendment or the INA.

Although Cardona's claim is somewhat unclear, he appears to contend that his removal is not reasonably foreseeable such that his indefinite detention pending removal violates his rights under Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6) limits a noncitizen's

---

[6] Cardona's opening brief is due on January 21, 2026.

[7] Cardona filed his initial petition on November 4, 2025, and moved to amend his petition on November 21.

detention pending removal "to a period reasonably necessary to bring about [his or her] removal from the United States." Id. at 689. The Court in Zadvydas recognized a "presumptively reasonable period of detention" of six months but held that, once a noncitizen who has been detained for six months "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. If the government cannot rebut it, it must release the noncitizen from custody. Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021).

Cardona's petition does not establish entitlement to relief. As described above, the government provided Cardona with a reasonable fear interview approximately a month after detaining him and an IJ reviewed and affirmed the asylum officer's negative finding shortly thereafter. See 8 C.F.R. § 208.31 (describing process for asylum officer's reasonable fear interview and IJ review). While Cardona has appealed the IJ's determination to the First Circuit, that court has declined to stay his removal pending adjudication of the merits of his claims. Other than stating that he has requested a reasonable fear interview (which he acknowledges he received), Cardona makes no argument that the government will be unable to remove him to Honduras. To the contrary, the government successfully removed Cardona to Honduras on two prior occasions. Nor has Cardona presented any legal argument as to how his present detention of approximately three months otherwise violates his statutory or constitutional rights. He simply asserts, in a conclusory fashion, that this detention violates the Constitution and the INA.

Cardona also appears to seek relief based on the negative consequences to his family. Cardona explains that his continued detention has left his wife unable to receive social security disability payments because he is the "payee" for such payments. Without these payments, Cardona states that his wife does not have access to the money she needs to support the couple's children. While the court sympathizes with Cardona's family's situation, these circumstances do not bear on the lawfulness of his present detention.[8]

## CONCLUSION

Cardona's amended petition for a writ of habeas corpus (doc. no. 5-1) is denied without prejudice. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 8, 2026

cc:    Counsel of Record

---

[8] Cardona also asserts that he is a beneficiary of an approved Form I-130. This form, or "petition," allows a United States citizen to apply for a noncitizen relative to remain in the county. Pena v. Hyde, No. CV 25-11983-NMG, 2025 WL 2108913, at *1 (D. Mass. July 28, 2025). Approval of this petition "does not give [the beneficiary] any immigration status or benefit." Mamedov v. Barr, No. 20-CV-1063 (ARR), 2021 WL 781743, at *1 (E.D.N.Y. Mar. 1, 2021) (alternation in original) (quoting USCIS I-130 Webpage). Other than noting that he is a beneficiary, Cardona makes no argument as to how approval of this form makes his present detention unlawful.